IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**KATHY J. OVERLUND**,

        Plaintiff,

    v.

**NANCY A. BERRYHILL**,[1]
Commissioner of Social Security,

        Defendant.

Case No. 6:15-cv-1670-SI

**OPINION AND ORDER**

Alan Graf, ALAN STUART GRAF, P.C., 208 Pine Street, Floyd, VA 24091. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hébert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Lars J. Nelson, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

        Kathy J. Overlund ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

PAGE 1 – OPINION AND ORDER

for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED further proceedings consistent with the instructions herein.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225-26.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed an application for DIB on October 17, 2011, alleging disability beginning on January 7, 2009. AR 28. She was born on November 14, 1956, and was 52 years old on the alleged disability onset date. AR 106. Plaintiff alleges disability due to osteoarthritis of the knees, osteoarthritis of the shoulders, degenerative disc disease of the lumbar and cervical spine, obesity, carpel tunnel syndrome, sleep apnea, essential hypertension, and severe hip impairment. AR 30-32. Plaintiff's claim was denied initially on June 19, 2012, and upon reconsideration on October 11, 2012. AR 28. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on December 6, 2012. *Id*. On November 26, 2013, an administrative hearing was held before ALJ Janice Shave. *Id*. On January 2, 2014, ALJ Shave issued a written decision in which she found Plaintiff not disabled within the meaning of the Act. AR 28-44.

On February 25, 2014, Plaintiff's attorney requested review of the ALJ's decision by the Appeals Council. AR 9. In doing so, Plaintiff's attorney attached two signed letters—drafted in February 2014—from Plaintiff's husband, Norm Overlund, and daughter, Amy Overlund (collectively, the "post-decision letters"). AR 7-9. On June 30, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 11-15. Plaintiff now seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.   Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.   Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.   Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings")? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.   Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ began her opinion by noting that Plaintiff met the insured status requirements of the Act through March 31, 2014. AR 28. The ALJ further noted that Plaintiff must establish disability on or before that date in order to be entitled to a period of disability and disability benefits. *Id*. The ALJ then applied the sequential analysis. AR 30-44. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 7, 2009. AR 30. At step two, the ALJ found that Plaintiff's osteoarthritis of the bilateral knees, osteoarthritis of the bilateral shoulders, degenerative disk disease of the lumbar and

cervical spine, and obesity were severe impairments. AR 30-32. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. AR 32-33.

The ALJ next determined that Plaintiff has the RFC to perform sedentary work. AR 33-42. In making that determination, the ALJ found several specific limitations that the ALJ included in the RFC: (1) Plaintiff is able to lift and/or carry ten pounds occasionally and less than ten pounds frequently; (2) Plaintiff can stand and/or walk for approximately two hours in an eight-hour workday, but not all at one time; (3) Plaintiff must elevate her left leg 12 to 18 inches when sitting; (3) Plaintiff must sometimes use a cane for ambulation during the two hours she can stand or walk over the workday, and needs the option to use the cane when needed; (4) Plaintiff cannot walk on uneven terrain or in a cluttered area; (5) Plaintiff is unable to climb ladders, ropes, or scaffolds, and she is unable to kneel or crawl; (6) Plaintiff is able to occasionally crouch, stoop, and balance while holding a hand-held assistive device; (7) Plaintiff can climb ramps and stairs occasionally within the two hour maximum that she can stand or walk; (8) Plaintiff is able to perform extended reaching in the front with the left upper extremity frequently, but not prolonged or all at once, and she must be able to rest her left arm; (9) Plaintiff is able to occasionally reach overhead bilaterally; (10) Plaintiff must avoid concentrated exposure to extreme cold, moderate exposure to unprotected heights, and hazardous or moving machinery; and (10) Plaintiff is limited to mildly complex instructions due to the distractions of pain. *Id*.

In evaluating Plaintiff's RFC, the ALJ considered Plaintiff's testimony, but found that it was less than fully credible. AR 39-40. In addition, the ALJ considered the written lay testimony submitted by Norm Overlund. AR 39-40, 42. The ALJ also considered the medical testimony

and evidence. She gave significant weight to the consultative examination performed by

Dr. DeWayde C. Perry in May 2012, but found that he overestimated Plaintiff's lifting and

carrying capacity, in addition to her capacity to stand and walk. AR 41, 523-30. The ALJ gave

great weight to the conclusions conveyed in a form completed in October 2014 by Plaintiff's

treating physician, Dr. Mark Litchman. AR 41, 686-89. In that report, Dr. Litchman stated that

Plaintiff needed to be "off her feet" periodically throughout the day due to knee pain, and

concluded that Plaintiff could perform sedentary work. AR 686-89.

The ALJ assigned limited weight to a check-the-box form filled out by Plaintiff's treating

physician, Dr. Mark Fletcher, in December 2013. AR 41, 718-21. Specifically, the ALJ limited

the weight given to Dr. Fletcher's opinion that Plaintiff could not effectively ambulate, as that

term is defined in the Act, because Dr. Fletcher provided no explanation for that conclusion,

Plaintiff had never claimed that she required a hand-held assistive device that limited both upper

extremities, and the question of whether Plaintiff is able to ambulate effectively is a legal

question reserved to the Commissioner. AR 42. The ALJ also gave little weight to Dr. Fletcher's

checking the box indicating that Plaintiff would be unable to maintain a regular work schedule

for more than four days per month, because the doctor did not explain his reasons for checking

that box and the medical record did not support that assertion. AR 42, 721. The ALJ gave great

weight to most of the opinions of the state reviewing physicians; however, the ALJ found that

Plaintiff was more limited in postural activities than found by the state agency consultants.

AR 42, 106-132.

At step four, the ALJ found—with the assistance of a Vocational Expert ("VE")—that

based on the Plaintiff's RFC, Plaintiff is capable of performing her past relevant work as a

bookkeeper, office helper, and receptionist bookkeeper. AR 42-43. Based on the finding that

PAGE 7 – OPINION AND ORDER

Plaintiff could perform her past relevant work, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. AR 43. Due to this finding of non-disability, the ALJ did not proceed to step five.

## DISCUSSION

Plaintiff seeks review of the determination by the ALJ that she is not disabled. Plaintiff argues that: (1) the ALJ failed to give sufficient reasons for discounting Plaintiff's subjective complaints; (2) the lay witness testimony contained in Norm and Amy Overlund's post-decision letters submitted to the Appeals Council calls into question the ALJ's determination; (3) the ALJ erred in deciding that Plaintiff could perform past relevant work despite the requirement that Plaintiff must sit with her left leg elevated; (4) the ALJ erred in not including in the RFC the limitation found by Dr. Perry that Plaintiff could only occasionally reach bilaterally; and (5) the ALJ erred by not discussing portions of the lay witness testimony submitted by Norm Overlund. Plaintiff asks the Court to remand her claim to the Commissioner for reconsideration.

## A.  Plaintiff's Credibility

Plaintiff argues that the ALJ failed to give sufficient reasons for rejecting Plaintiff's subjective complaints. Specifically, Plaintiff alleges that the ALJ erred by taking Plaintiff's collection of Unemployment Compensation ("UC") into consideration and factoring Plaintiff's decision to postpone knee surgery in determining that Plaintiff was less than fully credible.[2] Plaintiff further argues that the ALJ erred in determining that Plaintiff's symptom testimony was not supported by the medical record and Plaintiff's activities of daily living.

---

[2] Plaintiff also argues that the ALJ erroneously found that Plaintiff's use of a cane was not prescribed and the ALJ improperly reasoned that Plaintiff did not follow her doctor's suggestion that she take certain pain medication. These contentions are irrelevant to the ALJ's credibility determination because the ALJ never cited these reasons as a basis for determining Plaintiff was less than credible. Rather, the ALJ made these factual observations while summarizing Plaintiff's medical treatment history. AR 33-37.

### 1.    Standards for Evaluating a Claimant's Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an

individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.[3]

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may

---

[3] The Court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p). The ALJ's January 2014 decision was issued before SSR 16-3p became effective and there is not yet any binding authority interpreting this new ruling, including whether it applies retroactively. *Compare Ashlock v. Colvin*, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), *with Lockn'ood v. Colvin*, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the ALJ's findings in regard to this issue pass muster irrespective of which standard governs, the Court need not resolve this issue.

not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. The ALJ's Analysis

In undertaking the two-step credibility analysis, the ALJ found that Plaintiff presented objective medical evidence that could reasonably be expected to produce her alleged symptoms—satisfying step one. In moving to step two, the ALJ found no evidence of malingering; however, she found Plaintiff's symptom testimony inconsistent with the record of evidence and her activities of daily living. In doing so, the ALJ provided sufficiently specific, clear, and convincing reasons for finding Plaintiff's symptom testimony not fully supported by the record.

The ALJ began her credibility analysis by noting that Plaintiff stated that she received UC until approximately the "end of 2010, or beginning of 2011"—well after January 2009, the alleged onset date of Plaintiff's disability. AR 68, 70. Plaintiff argues that the ALJ's reference to Plaintiff's receipt of UC was an insufficient basis for discounting her alleged limitations. "Continued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988)). Plaintiff contends that only full-time work is inconsistent with allegations of disability, and "there is no evidence that she officially held herself out as available for full-time work." ECF 20 at 6; *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2009). Plaintiff, however, stated that she looked for both part-time and full-time work and that she was "ready, willing, and able to work" while receiving UC. AR 68. Thus, the ALJ did not err by

taking into consideration Plaintiff's own admission that she was able to work on a full-time basis for nearly two years after her alleged disability began.

Plaintiff also argues that the ALJ improperly "took issue with [Plaintiff's] decision to postpone knee surgery to take care of her dental needs and her husband's surgery." ECF 20 at 6. In furtherance of this argument, Plaintiff asserts that her decision to delay surgery was a "logistical decision" that does not discount her symptom testimony. *Id*. In discussing Plaintiff's decision to delay knee surgery, the ALJ stated that Plaintiff's choice to delay showed that Plaintiff was "functioning sufficiently well for her own purposes" and that she felt "capable of caring for her husband during his convalescence." AR 39. The ALJ concluded that Plaintiff's plan to care for her husband while he recovered from surgery was consistent with the ALJ's limitation to sedentary work. *Id*. Plaintiff's "personal preference" to delay needed surgery was a valid basis for the ALJ to discount Plaintiff's subjective complaints. *See Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012).

Plaintiff next argues that the ALJ gave only general reasons for finding that the medical record did not support the amount of pain Plaintiff alleged at the hearing. At the hearing Plaintiff stated that it takes her longer to perform mental tasks due to pain, and that she faced these difficulties towards the end of her time working her last job in early 2009. AR 70-71, 86-87. The ALJ agreed that Plaintiff is likely somewhat distracted by pain; and, for this reason, the ALJ limited Plaintiff to mildly complex instructions in the RFC. AR 39. In reaching this determination, the ALJ noted that Plaintiff had not reported to her treatment providers difficulty with concentration. *Id*. Although an ALJ cannot make a negative credibility finding based solely on the fact that the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence," the ALJ further noted the inconsistencies between the allegations

raised by Plaintiff at the hearing and the limitations she and her husband reported in agency

paperwork. *See Robbins* 466 F.3d at 883; AR 39. For example, Plaintiff completed a "Function

Report" in December 2011, in which she did not assert any difficulties with completing tasks,

concentration, understanding, or following instructions. AR 289. Plaintiff's husband report

similarly did not contain any such complaints. AR 268.

The ALJ also noted that Plaintiff's reported activities of daily living were inconsistent

with her allegations of disabling physical limitations and pain. AR 39-40. Conflict between a

claimant's everyday activities and her subjective symptom testimony is a clear and convincing

reason to reject that testimony. *Molina*, 674 F.3d at 1112–13. For example, Plaintiff reported to

her medical provider that she took care of her three-year-old grandchild while her daughter

attended classes at university. AR 412. She continued to babysit this grandchild until her

daughter moved away in August 2011. AR 57. Similarly, Plaintiff testified that she watches her

older grandchildren when their parents go out of town for vacation, and did so for a period of ten

days in August 2013. AR 58-59.

The ALJ further noted that Plaintiff cares for her pets; prepares meals most nights of the

week; attended dirt track races until her favorite driver stopped racing; shops for groceries—

although requiring some assistance with loading and unloading; uses the computer for bills and

social media; can travel by walking, driving, or riding in a car; performs some household chores;

cans, sews, and quilts; enjoys camping; and reads, watches movies, and has no difficulty

handling money. AR 40, 60-65, 72-73, 232-39, 263-270, 284-291, 389, 524, 558. The Court

agrees that this level of activity is inconsistent with an individual who is unable to perform

sedentary work. *See Bunnell*, 947 F.2d at 346 (stating "if the claimant engages in numerous daily

activities involving skills that could be transferred to the workplace, an adjudicator may discredit

the claimant's allegations upon making specific findings relating to the claimant's daily

activities); *Molina*, 674 F.3d at 1113 (finding "[e]ven where those activities suggest some

difficulty functioning, they may be grounds for discrediting the claimant's testimony to the

extent that they contradict claims of a totally debilitating impairment").

For the reasons discussed, the ALJ gave sufficiently specific, clear and convincing

reasons for discounting Plaintiff's symptom testimony. *See Smolen*, 80 F.3d at 1281. Moreover,

these findings are supported by substantial evidence found in the record. *Hammock*, 879 F.2d

at 501. Accordingly, the Court upholds the ALJ's credibility determination.

## B.  The Post-Decision Letters

Plaintiff argues that the ALJ's finding of no disability is no longer supported by

substantial evidence because the post-decision letters submitted to the Appeals Council by Norm

and Amy Overlund—Plaintiff's husband and daughter, respectively—undermine the ALJ's

findings relating to Plaintiff's activities of daily living and pain levels. In support of her

argument, Plaintiff cites to *Brewes v. Comm'r*, which holds that "when the Appeals Council

considers new evidence in deciding whether to review a decision of the ALJ, that evidence

becomes part of the administrative record, which the district court must consider when reviewing

the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec.

Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). In response, the Commissioner argues that the

post-decision letters were not considered by the Appeals Council, nor were they incorporated

into the record; therefore, the letters are not properly before the Court. The Commissioner's

argument fails, however, because it finds no basis in fact.

First, the post-decision letters were made part of the administrative record submitted and

certified by the Commissioner. *See* AR 7-8. Second, Plaintiff's attorney submitted the post-

decision letters to the Appeals Council in a letter dated February 25, 2014. AR 9. Subsequently,

PAGE 14 – OPINION AND ORDER

on April 3, 2014, Plaintiff's attorney responded to an extension of time granted by the Appeals

Council. AR 323-24. In that response, Plaintiff's attorney referenced the already submitted and

received post-decision letters, and wrote, "I assume [the post-decision letters] have been made

part of the record in this case." AR 323; *see also* AR 10. In a June 30, 2015 letter denying

Plaintiff's request for review, the Appeals Council stated that it "considered the reasons

[Plaintiff] disagreed with the [ALJ's] decision in the material listed on the enclosed Order of

Appeals Council," but found "this information does not provide a basis for changing the [ALJ's]

decision." AR 11-12. In describing the evidence received and made part of the record, the

enclosed "Order of Appeals Council" listed Plaintiff's letter dated April 3, 2014, which expressly

referenced the post-decision letters. AR 15. Given that the post-decision letters were in fact made

part of the administrative record certified by the Commissioner and the Appeals Council

considered Plaintiff's April 2014 letter, the Appeals Council's failure specifically to list the post-

decision letters in the Order of Appeals Council likely was merely an inadvertent mistake.

Accordingly, the Court reasonably infers that the Appeals Council considered the post-decision

letters by way of reference, and the letters are properly before the Court.

Thus, the only question remaining on this issue is whether, considering the assertions

made in the post-decision letters, the ALJ's decision is still supported by substantial evidence. In

arguing that the ALJ's decision is no longer supported, Plaintiff asserts that "where the ALJ's

error lies in a failure to properly discuss competent lay witness testimony favorable to the

claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude

that no reasonable ALJ, when fully crediting the testimony, could have reached a different

disability determination." ECF 26 at 7 (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d

1050, 1056 (9th Cir. 2006)). In light of *Stout,* Plaintiff argues that this Court cannot conclude that

failure to discuss the post-decision letters was harmless and requests that the Court remand her case to the Commissioner for a *de novo* hearing.

As a preliminary matter, *Stout* does not create grounds for automatic remand when an ALJ fails to give individualized reasons for rejecting lay witness testimony. *Molina*, 674 F.3d at 1117. Rather, the Ninth Circuit stated that such a narrow reading of *Stout* would "run afoul of our settled rule that we will not reverse for errors that are inconsequential to the ultimate nondisability determination." *Id*. (internal quotation marks omitted). For the reasons discussed below, the Court finds that the ALJ's "error"[4] was inconsequential to the ultimate determination of non-disability and was therefore harmless.

The letter submitted by Norm Overlund provides an "update" to the responses contained in a "Third Party Function Report" that he filled out in November 2011. *Compare* AR 7, *with* AR 263-70. The update covers the time period spanning from November 2011 to November 2013. Mr. Overlund claims that, due to increased pain, Plaintiff now does less housework than she had in the past; no longer does laundry or takes out the kitchen trash; takes longer to do chores; and has difficulties with concentration, memory, completing tasks, and getting along with others.

Mr. Overlund's post-decision letter essentially mirrors the limitations Plaintiff alleged at her hearing, which the ALJ found not supported in the recorded for the reasons already discussed. Because Mr. Overlund's assertions are cumulative, it follows that the reasons provided by the ALJ for discounting Plaintiff's subjective testimony would apply with equal force to Mr. Overlund's update. *See Molina*, 674 F.3d at 1116-17; *Valentine v. Comm'r, Soc.*

---

[4] The Court notes that it is somewhat nonsensical to assign error to the ALJ for failing to discuss lay witness testimony that was written and submitted *after* the ALJ issued her decision. Nonetheless, when new evidence is considered by the Appeals Council, that is what the Court must do.

*Sec. Admin.,* 574 F.3d 685, 694 (9th Cir. 2009) (indicating that it is not harmful error for the ALJ to fail to discuss lay witness testimony where the ALJ has provided sufficient reasons for rejecting similar testimony). Thus, if there was error, it was harmless.

Ms. Amy Overlund's post-decision letter alleges that up until August 2011—when she moved out of the Plaintiff's home—Ms. Overlund was responsible for the "more strenuous house work" due to Plaintiff's impairments. AR 8. According to Plaintiff, Ms. Overlund's post-decision letter "made it clear that much of the housework, that the ALJ assumed [Plaintiff] performed, was in fact, performed by [Plaintiff's] daughter." ECF 26 at 6.

First, the ALJ did not assume Plaintiff was performing housework that her daughter was in fact performing. Rather, the ALJ relied on Plaintiff's self-reported activities of daily living contained in her December 2011 "Function Report." AR 284-91. In that report, Plaintiff never indicated that her daughter assisted her in the housework she performed, but she did report that her husband helped her with some heavy lifting in the kitchen. AR 286. This indicates that Plaintiff was capable of accurately reporting what activities of daily living she was performing versus those activities she received assistance with. Furthermore, when the ALJ specifically questioned Plaintiff about the statements made in the Function Report, Plaintiff did not indicate that it was her daughter that was doing the bulk of the housework at that time. AR 62-65.

Second, most of the time period that Ms. Overlund states she performed most of the housework took place during the time Plaintiff was receiving UC benefits. During this time period, Plaintiff held herself out as being able, willing, and ready to perform full-time work. Thus, there were additional reasons provided by the ALJ for discounting Plaintiff's alleged limitations beyond her daily activities.

Third, the physical limitations asserted by Ms. Amy Overlund on Plaintiff's behalf were already accounted for in the RFC. For example, Ms. Overlund stated she was responsible for lifting and carrying objects over 20 pounds. AR 8. The ALJ determined that Plaintiff can lift ten pounds maximum on only an occasional basis, and less than that on a frequent basis. AR 33. Ms. Overlund also alleged that she assisted Plaintiff in activities involving "bending, stooping, squatting, [and] multiple trips up and down stairs." AR 8. The ALJ found that Plaintiff can do these movements only occasionally (crouching and stooping with the assistance of a hand-held device), and only during the two-hour maximum that she can stand and walk in an eight-hour period. AR 33. Because the limitations raised in Ms. Overlund's post-decision letter were already included in the RFC, the Court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. Accordingly, failure to consider Ms. Overlund's letter was inconsequential to the ALJ's ultimate determination of non-disability, and a remand for a *de novo* hearing on this issue is unwarranted. *Molina*, 674 F.3d at 1117.

## C.  Requirement to Elevate the Left Leg

Plaintiff next argues that the ALJ erred in determining at step four that Plaintiff could return to her past relevant work because the ALJ failed to find whether Plaintiff elevating her left leg while seated was consistent with Plaintiff's past relevant work. Plaintiff further argues that elevating one's leg is an accommodation, akin to a "reasonable accommodation," as that term is defined by the Americans with Disabilities Act ("ADA"), and such accommodations are not to be taken into account when determining a claimant's eligibility for Social Security DIB. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) (noting that "when the SSA determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of

PAGE 18 – OPINION AND ORDER

reasonable accommodation when she applies for SSDI" and thus an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it" (emphasis in original)); *see also* SSR 11-2p, 2011 WL 4055665, at *9 (Sep. 12, 2011) ("When we determine whether a person can perform his or her past relevant work, we do not consider potential accommodations unless his or her employer actually made the accommodation.").

The ALJ made her step four findings with the assistance of a VE, Jacklyn Bensondehaan. The VE testified that a hypothetical individual with the Plaintiff's vocational factors, who had Plaintiff's RFC, could return to Plaintiff's past relevant work as a bookkeeper, as described in the Dictionary of Occupational Titles ("DOT")[5]; receptionist bookkeeper, as the Plaintiff performed that job and as described in the DOT; and office helper, as the Plaintiff performed the job. AR 92-93.

When asked by Plaintiff's attorney whether an individual being allowed to elevate their leg was common in the type of jobs that Plaintiff previously performed, the VE responded that, due to the sedentary nature of Plaintiff's past work, it would be something that an "individual would be able to provide . . . for themselves under the desk, perhaps with a trashcan or

---

[5] DOT is a publication of the United States Department of Labor that gives detailed requirements for a variety of jobs. The Social Security Administration has taken administrative notice of the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153 n.8 (9th Cir. 2007). *See Dictionary of Occupational Titles*, Information Technology Associates (revised Apr. 18, 2011), http://www.occupationalinfo.org. The Administration relies "primarily on the DOT" for "information about the requirements of work in the national economy" at steps four and five of the sequential evaluation process. SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (Use of vocational experts and occupational information in disability decisions). For purposes of determining whether a claimant can perform gainful activity, the Commissioner may rely on the general job characteristics of the DOT as presumptively applicable to the claimant's prior work, but the claimant may overcome the presumption that the entry for a given job title applies to her by demonstrating that the duties in her particular line of work were not as described. *See, e.g., Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986).

something to that effect." AR 94. When asked whether doing so would push the individual

further away from their work station, the VE responded that it would "depend on . . . the depth of

[the] desk, the location of the desk from the chair," and "that is not an unreasonable adjustment

to a work environment . . . I have been able to make that accommodation with individuals [in]

like place and jobs in the past." *Id*. The ALJ briefly interrupted to clarify whether the VE was

using the Social Security Administration's ("SSA") specific definition or her own personal

definition for "accommodation." AR 95. The VE responded that she did not know the SSA

definition, and was using a description from her "professional experience." *Id*.

Based on this testimony, Plaintiff argues that the VE erroneously found that the

hypothetical individual could perform Plaintiff's past work because the VE included

accommodations in her analysis, without determining whether Plaintiff's former employers

would permit, or had permitted, such accommodations. The Commissioner responds that there is

a difference between an employer making an accommodation for an employee and an employee

performing the job as described while making her own modification. In support, the

Commissioner notes that at step four, a claimant may be found not disabled if she retains the

RFC to perform past work "as the claimant actually performed it *or* as generally performed in the

national economy." 20 C.F.R. § 404.1560(b)(2) (emphasis added). The Commissioner argues

that the VE's testimony demonstrates that an individual providing a self-help solution for

elevating their leg is consistent with Plaintiff's past work as it is generally performed in the

economy.

Under the ADA, a "reasonable accommodation" involves "making existing facilities used

by employees readily accessible to and usable by individuals with disabilities," including

"acquisition or modification of equipment or devices." 42 U.S.C. § 12111(9) (2012). Arguably,

the use of a "trashcan or something to that effect" to elevate one's leg is not the type of "reasonable accommodation" discussed by the ADA and the Supreme Court in *Cleveland*. 526 U.S. at 803. The potential need for additional, more substantial work-place modification, however, does raise the possibility of an ADA-type "reasonable accommodation." As pointed out by Plaintiff's attorney during the hearing, extending one's leg in order to elevate it would likely push an individual further away from their workspace. Given Plaintiff's reaching limitations, discussed more below, Plaintiff's need to elevate her leg could require other workstation modifications, such as a deeper desk than what is provided by her employer, the installation of an extendable keyboard tray, or a modified chair that would permit Plaintiff to use a keyboard without having to reach.

Furthermore, there is no testimonial or record evidence that indicates Plaintiff actually performed her past relevant work with the ability to elevate her leg or that doing so is consistent with how jobs of a like kind are generally performed in national economy. Due to this ambiguity, the Court cannot conclude that the ALJ did not impermissibly consider potential accommodations at step four. This constitutes harmful legal error and requires a remand for further consideration.

## D.  Plaintiff's Reaching Limitation

Plaintiff argues that the ALJ erred by failing to include limitations in the RFC incorporating the opinion of examining physician, Dr. Perry, that Plaintiff could only occasionally reach bilaterally. The ALJ assigned significant weight to this portion of Dr. Perry's assessment. AR 41. Despite this, the ALJ found that Plaintiff could "perform extended reaching in the front with the left upper extremity *frequently*" and "occasionally reach overhead bilaterally." AR 33 (emphasis added).

The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43.

The record does not show any contradiction with Dr. Perry's opinion that Plaintiff can reach only occasionally. *Compare* AR 114, *and* AR 129, *with* AR 528. This lack of contradiction is further indicated by the ALJ giving Dr. Perry's opinion "significant weight." AR 41. The Commissioner argues that the Court can reasonably infer that the ALJ did not include a limitation of occasional reaching in all directions because the ALJ found such a limitation inconsistent with Plaintiff's activities of daily living. If this was the ALJ's intention, however, the ALJ failed to articulate clear and convincing, or specific and legitimate, reasons for doing so. Essentially, the Commissioner is asking the Court to affirm the ALJ's decision on a ground that the Commissioner did not expressly rely upon. The Court cannot uphold the Commissioner on such a *post-hoc* rationalization. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Robbins*, 466 F.3d at 882; *Bray*, 554 F.3d at 1225-26.

"[I]n hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence." *Robbins*, 466 F.3d at 886. The ALJ's failure to properly account for the opinion of Dr. Perry calls into question the validity of the RFC determination. Because that determination was flawed, the hypothetical posed to the VE was legally inadequate. *Id.* "If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value." *Lewis v. Apfel,* 236 F.3d 503, 517 (9th Cir. 2001). Accordingly, the ALJ's step four findings were not supported by substantial evidence, which constitutes legal error and warrants remand to the Commissioner on this issue.

**E.  Lay-Witness Testimony**

Plaintiff argues that the ALJ committed legal error by omitting from her discussion parts of Mr. Overlund's written testimony regarding Plaintiff's difficulties with reaching and donning clothes. Plaintiff further argues that harmful error resulted because the omitted limitations were inconsistent with the ALJ's RFC determination.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053. Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *Id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no

reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Contrary to Plaintiff's contention, the ALJ did not omit parts of Mr. Overlund's written lay testimony from her analysis. In discussing that testimony, the ALJ noted that Mr. Overlund "reported [Plaintiff] had some difficulty attending to *personal care* due to back and *shoulder* pain . . . [and] was limited in her ability to lift, walk, stand, sit, squat, bend, *reach*, kneel, climb stairs, and use her hands." AR 42 (emphasis added). The ALJ stated that she "largely agree[d] with Mr. Overlund's statements," however, "Mr. Overlund's statements do not convince me [that Plaintiff's] functioning is more restricted than described in the [RFC]." *Id.*

Based on the ALJ's discussion of Plaintiff's difficulties with reaching and her personal care, which includes putting on clothes, the ALJ did not neglect to discuss Mr. Overlund's testimony. Moreover, the ALJ accounted for Mr. Overlund's testimony by including the reaching limitations in the RFC—albeit not to the degree of limitation found by Dr. Perry, as already discussed. Despite stating otherwise in a conclusory fashion, Plaintiff fails to show any apparent conflict between Mr. Overlund's testimony and the RFC. Accordingly, the ALJ did not err in her handling of Mr. Overlund's lay witness testimony. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (finding no error where there was no apparent conflict between an opinion and the RFC).

**F. Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the

utility of further proceedings. A remand for an award of benefits is appropriate when no useful

purpose would be served by further administrative proceedings or when the record has been fully

developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A

court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence

that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act.

*Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court.

*Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for

the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal
> error, such as failing to provide legally sufficient reasons for
> rejecting evidence. If the court finds such an error, it must next
> review the record as a whole and determine whether it is fully
> developed, is free from conflicts and ambiguities, and all essential
> factual matters have been resolved. In conducting this review, the
> district court must consider whether there are inconsistencies
> between the claimant's testimony and the medical evidence in the
> record, or whether the government has pointed to evidence in the
> record that the ALJ overlooked and explained how that evidence
> casts into serious doubt the claimant's claim to be disabled. Unless
> the district court concludes that further administrative proceedings
> would serve no useful purpose, it may not remand with a direction
> to provide benefits.
>
> If the district court does determine that the record has been fully
> developed and there are no outstanding issues left to be resolved,
> the district court must next consider whether the ALJ would be
> required to find the claimant disabled on remand if the improperly
> discredited evidence were credited as true. Said otherwise, the
> district court must consider the testimony or opinion that the ALJ
> improperly rejected, in the context of the otherwise undisputed
> record, and determine whether the ALJ would necessarily have to
> conclude that the claimant were disabled if that testimony or
> opinion were deemed true. If so, the district court may exercise its
> discretion to remand the case for an award of benefits. A district
> court is generally not required to exercise such discretion,
> however. District courts retain flexibility in determining the

> appropriate remedy and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

As discussed above, the ALJ failed to determine whether Plaintiff's need to elevate her leg would require an accommodation, and if so, whether that accommodation is consistent with Plaintiff's past relevant work. Furthermore, the ALJ failed to give legally sufficient reasons for not including in the RFC Dr. Perry's complete reaching limitation. The Court, however, finds that there are remaining conflicts and ambiguities that need be resolved. Namely, whether Plaintiff, with an accurately explained RFC, is capable of performing her past relevant work; and, if not, whether Plaintiff is capable of performing other work that exists in the national economy under step five. Thus, remanding for further proceedings consistent with this opinion is more appropriate than an award of immediate benefits.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 27th day of March, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge